SELLMAN v DEPARTMENT OF NATURAL RESOURCES

OPINION OF THE COURT

1. STATUTES—DEPARTMENT OF NATURAL RESOURCES—FISH—FISHING LICENSES—PROTECTED SPECIES—MARKET PRICE—REGULATIONS.

The statute granting authority to the Department of Natural Resources to regulate the number of commercial fishing licenses in order to protect endangered species should not be read as a blanket delegation of legislative authority, and the practice of tying the amount of money collected from commercial fishermen for marketing protected species of fish unavoidably caught to the market price of the fish at any given time is not an acceptable practice (MCLA 308.1b).

2. ADMINISTRATIVE LAW—COMMERCIAL FISHERMEN—MARKETING PROTECTED SPECIES—SURRENDER TO STATE—HANDLING FEES—CHOICE—UNEQUIVOCAL STATEMENT.

Regulations did not provide a choice for fishermen between making a 35-cents per pound payment to the state for marketing protected species of fish unavoidably caught in commercial fishing operations and collecting 15-cents per pound for dressing and handling those protected species where a plain unequivocal statement to that effect was not on each commercial fishing license issued.

3. ADMINISTRATIVE LAW—REGULATIONS—AUTHORITY—PECUNIARY LOSS—STANDING.

Plaintiffs lacked standing to attack a regulation of an administrative agency on grounds that it was without authority to adopt the regulation where they showed no adverse effect or pecuniary loss.

OPINION BY DANHOF, J.

4. ADMINISTRATIVE LAW—PROCEDURE—DUTY—STANDING TO OBJECT.

*Adoption by an administrative agency of a procedure which does*

REFERENCES FOR POINTS IN HEADNOTES
[1] 35 Am Jur 2d, Fish and Game § 29 *et seq.*
[2, 5–7] 35 Am Jur 2d, Fish and Game §§ 34, 38, 42.
[3, 4] 2 Am Jur 2d, Administrative Law § 278.

*not purport to impose any duty on, or affect any right of, persons dealing with the agency gives no standing to those persons to complain that the policy was not promulgated as a rule in a manner provided in the administrative code.*

5. ADMINISTRATIVE LAW—FISH—DEPARTMENT OF NATURAL RESOURCES —COMMERCIAL FISHING—MARKETING PROTECTED SPECIES—SURRENDER TO STATE—ELECTION.

*Plaintiffs are not entitled to recover monies which they chose to remit to the Department of Natural Resources for marketing protected species of fish unavoidably caught in commercial fishing operations where they have elected to exercise this option rather than dispose of the fish by surrendering them to the department and receiving compensation for handling expenses as provided by regulation. (1968 AACS, R299.844, 1970–1971 AACS, R299.885.)*

6. FISH—ADMINISTRATIVE LAW—REGULATIONS—COMMERCIAL FISHING —MARKETING PROTECTED SPECIES—NOTICE—FISHING LICENSE ATTACHMENT—PRIOR PUBLICATION RULE.

*Commercial fishermen had actual and timely notice of the terms of a new regulation providing for the disposal of protected species of fish, within the exception to the prior publication rule established by statute, where the terms of the regulation, which was in effect from June of 1970 to February of 1971, were detailed in an attachment to all commercial fishing licenses issued for 1970 (MCLA 24.223[1]).*

7. FISH—STATE REGULATION—FEES—COMMERCIAL FISHERMEN—PROTECTED SPECIES—COMMERCIAL PURPOSES.

*The statute limiting the financial remuneration charged by the state for fish taken for commercial purposes to five percent of the price received by the licensee does not apply to state assessments for marketing protected species which are unavoidably caught in the commercial operation because such species are not taken for commercial purposes (MCLA 308.1c).*

Appeal from Court of Claims, Mark S. Andrews, J. Submitted Division 2 March 12, 1975, at Lansing. (Docket No. 20681.) Decided May 30, 1975.

Complaint by Harold Sellman, and others, for themselves and on behalf of all commercial fishermen licensed by the state since January 1, 1969, against the Department of Natural Resources,

seeking to recover monies collected by the department for protected species of fish marketed by plaintiffs. Judgment for defendant. Plaintiffs appeal. Affirmed.

*Nino E. Green* (by *Frederick C. Weisse)*, for plaintiffs.

*Frank J. Kelley,* Attorney General, and *Jerome Maslowski* and *Stewart H. Freeman,* Assistants Attorney General, for defendant.

Before: DANHOF, P. J. and D. E. HOLBROOK, JR., and O'HARA,* JJ.

O'HARA and D. E. HOLBROOK, JR., JJ. *(concurring in result).* Judge HOLBROOK and I concur in the result reached by Judge DANHOF but we feel obligated to record certain reservations. While we reach the same result we arrive at it for a different reason. These reservations arise not so much out of our colleague's opinion as out of the practical problems posed by the fact that lake trout don't read very well. It is impossible to affix a sign to gill nets: "No Lake Trout Allowed". We also feel obligated to include certain observations which might mandate a contrary conclusion under other circumstances.

No one can fail to admire the monumental performance of the Department of Natural Resources (DNR) in regenerating lake trout from a point at which they were almost extinct in the American waters of the Great Lakes. We do not desire by judicial decision to hamper their continued efforts.

Yet commercial fishing is a measurable part of

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

the economy of many parts of Michigan on the
Great Lakes. While protecting the species as game
fish, we cannot disregard the legitimate activity of
gill net commercial fishing for what is generally
known as "rough" fish.

Our objections to the broad sweep of the opinion
are twofold. First, we have grave concern as to the
blanket delegation of legislative authority to the
DNR. We refer to the somewhat disturbing lan-
guage of the statute which provides:

"Notwithstanding the provisions of this *or any other*
act, the director of conservation, when *in his opinion*
* * * may limit the number of fishing licenses to be
issued under * * * this act." (Emphasis added.) MCLA
308.1b; MSA 13.1491(2).

Carried to its logical legal conclusion why then
cannot the Public Service Commission in its *sole
discretion* limit the number of for-hire vehicles, or
equally exercise the same blanket power over all
utilities subject to its jurisdiction?

Our second concern is tying the amount of
money collected from commercial fishermen to the
market price of a protected species of fish at any
given time which in practical effect is what was
done.

If the market price goes up does the amount
required to be paid by the fishermen go up and
decrease if it declines?

We do not accept the contention of the DNR
that this practice is comparable to authorizing
agents to sell hunting and fishing licenses and
retaining a small percentage of the price of the
license for this service. The analogy we think is
unsound in principle.

Nor do we think under the regulations as pub-
lished the fishermen had a "choice" between the

35-cent-per-pound payment to the state and the prior flat 15-cent-per-pound handling fee. To recognize such a choice, in our view, requires a plain unequivocal statement to that effect on each license issued.

We limit our concurrence to the fact that the named plaintiffs and members of their class showed no adverse effect upon them and specifically no pecuniary loss. This we consider deprives them of standing to attack the regulation in question.

We also hold specifically that this opinion is limited to the peculiar if not unique facts of *this* case and is not to be considered as authority by analogy to any other case involving administrative board or bureau regulations.

DANHOF, P. J. Plaintiffs are 27 commercial fishermen who brought an action on behalf of themselves and all commercial fishermen licensed by the state since January 1, 1969 to recover money collected from them by the Department of Natural Resources for lake trout taken by them incidental to their commercial fishing operations since June 15, 1970. A partial summary judgment in favor of the defendants was entered on July 10, 1972. Plaintiffs attempted to appeal to this Court, but their appeal was dismissed for lack of jurisdiction. A summary judgment dismissing the action was entered on May 31, 1974, and plaintiffs now appeal from that final adjudication. We affirm.

Since 1967, commercial fishing for lake trout has been prohibited in the major Great Lakes.[1] However, the nature of commercial fishing, involving as it does the use of large gill nets, makes it

---

[1] 1962 AACS, R299.771 as to Lake Superior; 1964–65 AACS, R299.791 as to Lake Michigan; 1967 AACS, R299.831 as to Lake Huron.

impossible to prevent the taking of many protected species including the lake trout. Provision for this was made in the original administrative rules which have been modified by 1968 AACS, R299.844, effective May 15, 1969, which states in part:

"All live fish, except alewives, smelt, herring, chubs, perch, menominees, and suckers taken in lawful gill nets with meshes of 2 3/4 inches or less set in waters of a depth in excess of 35 fathoms shall be returned to the waters from which they were taken with as little injury as possible by the persons lifting the nets. All sound, dead fish of any other species found in the nets shall be the property of the state and shall not be sold or disposed of, but shall be dressed, iced, or otherwise chilled and brought ashore by the person taking them.

*     *     *

"Parties handling such fish shall be paid not to exceed 15 cents per pound for dressing, boxing, packing, and icing the fish. The director shall remove or cause to be removed any of such nets when he determines that such nets are taking significant numbers of fish of the species other than alewives, smelt, herring, chubs, perch, menominees and suckers."

The Department of Natural Resources made a policy determination in 1970 whereby an alternative method of disposing of inadvertently caught lake trout would be made available to commercial fishermen. On the face of all commercial fishing licenses issued for 1970, the following notation appeared:

"Dead, sound lake trout may be retained, sealed and sold in accordance with General Provision III. Said lake trout must be 17 inches or more in length."

Attached to each license was the full text of General Provision III which read as follows:

"III. DISPOSITION OF FISH OTHER THAN THOSE LAWFUL TO TAKE

"All live, protected species taken with commercial gear incidental to fishing for other species of fish shall be immediately returned to the water with as little injury as possible.

"All dead, protected species except legal size lake trout shall be dressed and iced and disposed of in accordance with written "Disposal Instructions" issued by the local conservation officer. You are entitled to reimbursement for these fish at the rate of 15 cents per pound (dressed weight).

"All dead, legal size lake trout shall be tagged with self-locking metal seals (furnished by the Department) prior to arrival at dock or landing point. Such seal shall remain attached until the fish is prepared for consumption. You are authorized to sell the lake trout provided you submit monthly with the *Michigan Great Lakes Daily Commercial Catch Report:*

a) Remittance (check or money order) in the amount of thirty-five cents ($.35) per pound (dressed weight) for all lake trout sold.

b) Sale receipts or other suitable records giving date of sale, name and address of purchaser, and the dressed weight of all lake trout sold."

This alternative method first promulgated as General Provision III was formally adopted and published by the Department of Natural Resources and made mandatory by 1970–1971 AACS, R299.885, which was found by the Court of Claims to have become effective on February 12, 1971. Plaintiffs contend that the 35-cents-per-pound assessment under the alternate plan is invalid and unlawful, and they seek to recover payments to the state pursuant to that plan.

Plaintiffs question the procedural propriety by

which the alternate scheme was originally adopted. They claim that the Department of Natural Resources had no authority to collect the 35-cents-per-pound assessment prior to the February 12, 1971 effective date of 1970–1971 AACS, R299.885 in that the new procedure was not formally published as a rule as required by MCLA 24.221(1)(b); MSA 3.560(121)(1)(b).

Plaintiffs have made no attempt to explain, distinguish or refute the trial court's answer to this contention. In a written opinion filed on March 29, 1974, Circuit Judge Mark S. Andrews sitting on the Court of Claims observed, "that the payment of 35 cents per pound for lake trout incidentally caught by plaintiffs as commercial fishermen was a matter of choice". Plaintiffs could have disposed of the fish under the provisions of 1968 AACS, R299.844 and collected a service fee of 15 cents per pound. Citing *Beger v Industrial Painting Co,* 7 Mich App 628; 152 NW2d 706 (1967), *lv den,* 380 Mich 753 (1968), the Court stated:

> "Under these circumstances the policy of the department imposed no duty upon and affected no rights of the commercial fishermen."

In *Beger v Industrial Painting Co, supra,* 7 Mich App at 631 this Court held that the adoption by an administrative agency of a procedure which "did not purport to impose any duty on, or affect any right of, persons dealing with the department" gave "no standing to complain that the policy therein set forth was not promulgated as a rule in a manner provided in the administrative code". Thus, the plaintiffs in the present case have no standing to object to the manner in which the alternate payment plan was adopted. Therefore,

we concur in the trial court's conclusion that "having elected to exercise the option granted to them by the department with their licenses, the plaintiffs have not shown that they were entitled to recovery of the moneys they chose to remit to the department".

Furthermore, the failure to publish the new regulation does not necessarily render it invalid. The terms of the alternate plan were detailed in an attachment to all commercial fishing licenses issued for 1970. Thus, all affected commercial fishermen had "actual and timely notice of the terms thereof" within the exception to the prior publication rule established by MCLA 24.223(1); MSA 3.560(123)(1). The plaintiffs cannot recover payments voluntarily made under the optional payment policy of the Department of Natural Resources in effect between June 15, 1970 and February 12, 1971.

Plaintiffs argue that even after the February 12, 1971 effective date of 1970–1971 AACS, R299.885, the assessment was invalid because it exceeded the scope of the Department of Natural Resources' statutory authority in that it imposed a tax of more than five percent of the price received for the fish contrary to the expressed provisions of MCLA 308.1c; MSA 13.1491(3). That statute reads as follows:

"The conservation commission shall provide a financial remuneration to the state for fish taken for commercial purposes by collection from the licensee of not more than 5% of the price received by the licensee. Moneys received shall be credited to the fish and game protection fund to be used in the development and management of the fisheries resource."

Plaintiffs' interpretation is refuted by the lan-

guage of the statute itself. The statute imposes a five percent limitation on fish "taken for commercial purposes". The lake trout under consideration herein were not taken for commercial purposes; rather, they were taken inadvertently and unavoidably during legitimate commercial fishing operations. Had they been otherwise taken, the fishermen would be in violation of the previously discussed DNR rules protecting lake trout from commercial exploitation.

The inadvertently taken lake trout remained the property of the state. *Aikens v Department of Conservation,* 387 Mich 495; 198 NW2d 304 (1972). The charge imposed by 1970–1971 AACS, R299.885 is not imposed on fish taken for commercial purposes. On the contrary, the sum which is the difference between the 35-cent-per-pound assessment and the amount for which the fish are sold on the market is a fee provided to the commercial fishermen to defray the cost of processing the state's property. The collection of payments pursuant to 1970–1971 AACS, R299.855, not being an assessment on fish taken for commercial purposes, is not violative of MCLA 308.1c; MSA 13.1491(3).

Affirmed. Costs to defendants.